The District Court abused its discretion in this case in determining that the government was substantially justified in imposing on a state court custody order a finality or discretion by misapplying the reasonable person standard. It ignored three critical flaws in the government's defense that cannot, taken independently or as a whole, be justified to a degree that could satisfy a reasonable person. First, the government's decision and the arguments defied the plain meaning and explicit verb tense in the statute. Second, the government intruded upon a sphere reserved to the state pertaining to domestic relations orders contrary to related precedent. And third, the government relied on a defunct regulation to support its position that was plainly at odds with the statute. Of course, misapplying the law is an abuse of discretion in this circuit, and the decision denying each of these in this case was legally erroneous. Take the first defect in the government's case. USCIS's decision below and in its own terms... I just want to say a little bit because your opponents, as you are atomizing the government's case, you've got to look at it as a whole. And these three and four points that you bring up are subsidiary points to the government's overall theory of the matter. What do you say as to that? Are you atomizing it, or are you dividing and conquering, or what? Well, the standard, of course, is you need to take the case as a whole, of course, and that's what we've done. But in order to understand the whole, you do have to look at the parts. And taken in the aggregate, the government was not substantially justified. You need to look at each of the component parts of their argument. And when you take each of them and then put them together as a whole, neither can be substantially justified. The first is not substantially justified on the point of permanency, because as this court sitting on bond found, there is no permanency requirement. In fact, that's plainly at odds with the statute, namely the verb tense. So, of course, if I could interrupt. I mean, we've had a good debate about this case for years and appreciate all that. And our court has spoken, you know, en banc opinion. So I certainly respect that, even though I was on a different side of that. That's our law, and we're bound by it. But is the fact that that was the outcome, it feels like your argument is because of that outcome, necessarily the government's position was unjustified. And, you know, we had a pretty good debate about issues that, you know, different folks looked at differently. But a number of judges in the district court and others have had a different view. And, you know, I don't think anyone thought the other positions were frivolous. So in a context like that, where there is a reasonable debate about something that has not been specifically addressed by binding precedent, how is that not a justifiable position to take? Thank you, Your Honor. Yes, the government's defense, at least in this particular matter, now on the Egypt question has been primarily that it was a novel question, not addressed before by this court. And therefore, they were legitimated and pushing for the issue because they claimed there was no authority sort of guiding them. That's not quite accurate. First problem with it is that it can't be the case that if a federal agency, which of course is a creature of statute, and must be bound by the statutory law that creates it in its organic statute, if it flies in the face of the plain meaning of that statute, ordinarily you would have to conclude that that in itself shows that there's no substantial justification, especially in the world in which we live now, where, you know, the text of the statute controls. That is the basis for... It said this thing had to be a permanent custody order. Right. Were they entitled to defend that, the government? No. They weren't entitled to defend it? They were not. On two grounds. First, this thing is that you said at the outset, we review the district court's decision for abuse of discretion. And what's your theory of how the district court abuses discretion? Are you pointing to an error of law or errors of law or what? I don't know what you're getting at. Mm-hmm. Yes. Thank you, Your Honor. Well, the point is, is that the district court abuses discretion misapplying the reasonable person standard. Of course, that is the standard under EJIA with substantial justification. And a misapplication of law or a binding standard is an abuse of discretion. But that's the argument. But the district court, I mean, to follow up on Judge King's question, listed, you know, the, you know, some of the law that was in the Fourth Circuit at the time, the Reyes decision. I think it addressed the Ojo decision that we had a good debate about. It talked about the ways that various agencies and the district courts and, you know, different, our panel had looked at it. And, you know, that sounds like the court's looking at factors to try to come to a conclusion about substantial justification. And to Judge King's question, why is that? I mean, you might have a different view of how that was resolved. But are those factors that just are absolutely as a matter of law, yet outside the bounds of what can be considered? No, those are factors that must be considered. It has an abuse of discretion. Because the law that the district court analyzed was incorrect. The Reyes decision did not support the government's position in this case. I know it's, the government has pressed that in this law. But the Reyes decision, it's unpublished. But in any event, it was a decision from this court that actually upheld USCIS's decision, but in part on the ground that it agreed that USCIS's refusal in that case to accept a post-order affidavit would have improperly intruded upon the state court's domestic relations order. And so USCIS was already on notice in that case, Reyes and in Ojo, that it was inappropriate for the government, under the wording of the statute, to impose extraneous conditions for review de novo, the state court domestic relations order. And that's exactly what it did in this case. District court, that was sort of lost on the district court in the agency. So that's one fatal error, showing an abuse of discretion. The other problem is that the court didn't... Counselor, it sounds like to me you're arguing that the government's position was wrong. And this court has spoken on that question. It was wrong. But this statute, and I think as Judge Quattlebaum said, we all accept the fact that our position in that case was a losing one and that we're bound by the majority's holding. But at the same time, this statute was not written in the way that 1988 was written. It's not just a purely prevailing party statute. There's a clause unless the government's position is substantially justified. And I don't think we can just jump immediately by virtue of hindsight to say that something that was uncertain at the time became certain as a result of the court's in-bank ruling. But that doesn't mean that the government was clairvoyant or prophetic enough to understand it ultimately would not prevail in a closed case. And we're looking at this with the benefit of hindsight because we know who won. But the parties before the case were struggling with a very difficult question, which was how that emergency order ought to be interpreted. And you did have six judges on the court, or I have many in the district court, that interpreted the statute one way. And then had nine judges in the majority that interpreted the statute another way. When you get this close to division, we were trying to figure out what effect the emergency order would have under South Carolina law and whether the absence of parental reunification authority was prevented the order from qualifying under the S.I.J. status. All I'm trying to suggest, Ruth, is it was a hard case. And losers in hard cases, it doesn't mean that their position isn't substantially justified. That's why we have an adversary process to resolve the hard cases. Understood, Your Honor. And I agree with everything you said. That's not the argument we're making. We're not saying just simply because the plaintiff in this case prevailed that they are entitled to an EJ award. No, the government does need to show that they were substantially justified. They didn't do that, and it's not because of hindsight. It's because if you look at the case and how they prosecuted their defense and the arguments they made were not justified by a reasonable person's standard. And it doesn't simply have to deal with the fact that there was a disagreement over the meaning of the statute. Of course, it was the plain meaning of the statute, and the government lost. But what is more critical is the other they made to justify their position. For example, using a defunct regulation that they knew was no longer operative because the statute had changed. In fact, they latched onto the very terms in the regulation that were borrowed from the statute that had been superseded. It's black letter administrative law that when a regulation based on a statute and that statute has changed, the reasonable administrator is going to operate their program under a defunct regulation that has been superseded by statute. Yet still, the Justice Department pressed that point continual, convinced the district court of that, likely leading the district court down a primrose path about that regulation, and then continued to press that point on appeal. Knowing full well that regulation was not in effect and could not justify any permutation of its permanency argument, which had shifted from one permutation to another throughout the case. But the common element there was that they recurred to a defunct regulation. And that cannot be substantially justified. They knew full well that that regulation was not in effect, they should not have used it. And on that basis, you see that they just could not be substantially justified. And that taken in conjunction with the other problems in the government's case, we've been discussing the statute on the verb tense. But there's another problem, of course, with how they construed the custody. This court had already determined in OJO and discussed relatedly in RAIA as a case in which they rely, that they're not supposed to be imposing extraneous standards on domestic relations orders, because those issues are reserved to the state. And that's exactly what they presumed to do here. They were told not to. They were just asking a hard question. And that is, you know, what effect would the North Carolina courts give to the emergency order? And whether the North Carolina court lacked jurisdiction or whether they had jurisdiction to establish custody in the emergency order. And the question was whether it had jurisdiction to rule on the matter of a reunification with the parents, which was critical in determining whether the order qualified the petitioner for SIJ status. And all I'm suggesting to you is that was a tough question. It was a hard question. It was not a gimme. It was not a lay down. And, you know, I'm perfectly willing to accept the fact that the view is expressed turned out to be the minority one. It was an incorrect one. And everybody understands that. But if you put yourself back in the shoes of lawyers who didn't have the benefit of the court ruling that we now do, they were struggling with the hard question. And that is the effect that North Carolina would give that emergency order and how did that lined up with the SIJ status. And we were all wrestling with that. And Judge King and Judge Quartlebaum wrote very fine opinions. They both did. They disagreed. That doesn't mean one of them or the other of them was unreasonable. That's what I can say. I said a bystander would look at their good debate, the good debate of my colleagues and say, yeah, these are good judges dealing with a close case and a hard case. And that doesn't make one side unreasonable because it's the job of the adversary process, particularly at the appellate level, to resolve the hard cases. That's all I'm saying to you is taking up a bit of your time. So if you have something to add, I'm happy to lapse into silence. Thank you, Your Honor. Those points are much appreciated. And I do agree with you that, of course, in retrospect, things have a different texture. Mr. Forte, I've practiced law for a long time. And as part of this adversary system, I always thought that each side should be zealously represented in order for the system to function properly. And I don't want to, I wouldn't want to do anything to jeopardize that system at all. I mean, this is a minor, this statute fine tunes it a little bit in dealing with the government, and maybe it places a little bit more of a burden on the government. But lawyers have to be encouraged to be willing to step forward and take sometimes unpopular positions or tough positions and argue on behalf of their party, unless there's some special rule that makes the government lawyers different than the private lawyers completely, uh, which I don't know of. Well, there are special rules. This statute does impose a special rule. You could be a zealous advocate, but it has limits. Let me finish. I'm sorry. I thought you were done, Your Honor. I apologize. Judge Wilkinson and Judge Quattlebaum are my friends and colleagues. And we had an intense debate concerning this case over an extended period. But we respect each other's positions, and we respected them, and we continue to respect them. And each side was represented by good lawyers. And I'm reluctant to start shifting fees just because of one side lost and the other side won as to what it's going to do to the adversary process. Well, it's my... I have to apologize. I'm sorry. Is someone else speaking? There's an exception to it in that Judge Conrad abused his discretion some way or another. Well, I do have to apologize to the court because apparently I have not made my point clear. And so let me just wrap up by saying I am not suggesting just simply because the plaintiffs won that they are then entitled to fees. And I'm not saying that it wasn't a vigorous debate back and forth, but it just wasn't justified on the government side. And in part, I've discussed the issues. I'll leave it there, but I just have to reemphasize the point that it was completely unjust and improper for them to recur to a defunct regulation knowing that it was not in place, and they were pursuing an outcome at all costs, which is apparent from their briefs. And that's the type of advocacy that I think EJIA statute attempts to limit in order to level the playing field between the large federal government with its infinite resources and individuals who are up against that. All right. Thank you very much, counsel. All right. Let's hear from Ms. Wall. We'd be pleased to hear from you, Ms. Wall. Good morning, Your Honors. May it please the court. Chatul Wall from the Department of Justice on behalf of the United States Citizenship and Immigration Services. First, I'd like to say good morning, Judge Quattlebaum. It's good to be here again. This was your very first case on the bench and my very first oral argument in the appellate court. So glad to be back here with you and back from Georgia, Judge King. Good morning, Judge Wilkinson. Judge Wilkinson, you are absolutely correct. This was a very hard and complex case on the merits. Fortunately for us, this is a straightforward, easy EJIA case. Government was substantially justified. Judge Conrad absolutely did not abuse his discretion here. And we ask that this court affirm Judge Conrad's decision to deny Mr. Perez's motion for attorney's fees. The statute allows plaintiff's motions for attorney's fees when they prevail, unless the government's position is substantially justified. This court has taken a holistic view, looking at the totality of the circumstances. I will say this court in Paisley addressed this issue that Mr. Forney just mentioned, even though it's not true in this situation. But let's say that Judge Conrad did in fact take a view that was incorrect as to the law. This court said in Paisley, even with respect to misapprehensions of controlling law, our view of the district court's decision must be deferential in obedience to Pierce. And Pierce is the Supreme Court case dealing with the EJIA statute and substantial justification. It's a deferential view that this court takes, and it's a highly strict view when it comes to the fees statute here. As Judge King said, there was a healthy debate in this case. Reasonable minds did differ. Reasonable minds took positions that were well thought out, just like Judge Conrad's opinion, well reasoned. That doesn't mean that the government's position was not justified, simply because after review from the district court, after review from the panel here, and after review from an en banc court, that position lost nine to six. Substantially justified means that the government's position is justified to a degree that could satisfy reasonable people. It's not a high degree. And let's not forget, and this goes to the heart of the plaintiff's position here, to parse out the arguments, to parse out the positions. The statute itself says position. It's singular. The Supreme Court in INSVG has said what this must make one threshold determination for the whole case. It's inclusive as a whole, not atomized line items. And so when we look at the position of the government as a whole, and not individualized arguments, we come to the conclusion that the government's position as a three essential arguments, that the government imposed an ultra virus permanency requirement, the government was arbitrary and capricious and not otherwise in accordance with law, when it imposed that ultra virus permanency requirement, and that the government violated the full faith and credit clause. The government defended all three of these claims consistently, and throughout the litigation, cradle to grave. Now, Mr. Perez argues that the government did not make these arguments, that the government was not substantially justified because no court or judge ever adopted any of the government's arguments throughout this litigation. That's at page 17 of his brief. And then again, at page 20, Mr. Perez argues that the government abandoned its permanency argument en banc. And this is one reason why the government was not substantially justified. However, at the record at page 375, Mr. Perez concedes that this panel's opinion adopted the government's argument, and that there was no permanency requirement. Again, at the record, joint appendix 95 and 201, the district court and this court respectively adopted the government's argument that it did not impose a permanency requirement. En banc, where Mr. Perez says that the government abandoned its argument about the permanency requirement, the government argued it did not impose a permanency requirement. Spent five The dissenting judges adopted that argument, that the government did not impose a permanency requirement. The next claim the plaintiff made that the government argued about the arbitrary and capriciousness, sorry, the next claim, the North Carolina statutes, this is what I wanted to talk about. The plaintiff talks about the arguments that the government made were the basis for its decision was the North Carolina statutory provisions. And the court adopted that argument at joint appendix 202 and 203. This panel majority analyzed those same statutes and then published that decision at joint appendix 202 and 203. Ms. Wall, I don't mean to cut you off, but you've written a very fine brief and I wonder if we might let's, at this point, let the panel see if it has any further questions of you because you've really covered your, you made your points well in the brief and you also made them well at oral argument. And at this point I'm going to ask Judge King and Judge Quattlebaum if they have some questions of you. Judge King? I do not, your honor. Judge Quattlebaum? I don't have any questions either, thank you. I don't have any questions either, so I don't mean to cut you off because I want you to know how much we've appreciated your argument, but I think it would be fine for you to rest on your brief. Absolutely, thank you, your honor, and I am honored. I will rest on my brief. All right, thank you. Mr. Forney? I think you need to unmute yourself here. Okay. Sorry, your honor. Just two brief points. I just want to refer the panel respectfully to the statute, Agenda Statute 2412D2D, which defines what the position of the United States is and that does include the agency action under review. So part and parcel of determining whether the government's position is reasonable is looking at the agency's decision and then how the Department of Justice dealt with that decision. And it dealt with that decision in a way that was not entirely accurate. It was saying there was no permanency requirement imposed by that decision, but it, in fact, did such by its plain terms. So that's relevant only in the sense of the texture at which the panelists to look at what the government did in this case. The other thing, lastly, is just that it was rather difficult to understand what the government was arguing for the Justice Department on the permanency issue. It appeared to trade on an permanency mean. Sometimes they appeared to suggest it meant finality. Sometimes they appeared to suggest it meant a final determination about non-viability. And they appeared to go back and forth between the two. And I think that created a lot of confusion, both at the district court level and at the initial panel level. And I think that goes to the point about substantial justification because it showed a type of duplicity that was at odds with their own decision they were defending and an unclarity about what they were doing exactly in the case. I think those points just go to the lack of substantial justification. And I'd like to thank the court for their time today. I'll rest at this point. We want to thank you. We want to thank you in person, but we appreciate the arguments nonetheless.
judges: J. Harvie Wilkinson III, Robert B. King, A. Marvin Quattlebaum Jr.